IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | | |
|---|---|---|
| Martha Jean Adams-Heggins, | ) | C/A No.  5:11-2345-TLW-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| South Carolina State University; Dr. Louis | ) | |
| Whitesides; and Necati Engec, *in their* | ) | |
| *individual capacities*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

The plaintiff, Martha Jean Adams-Heggins ("Adams-Heggins"), filed this action pursuant

to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq. against her

former employer, South Carolina State University, as well as a state law claim of civil conspiracy

against the individual defendants, Dr. Louis Whitesides and Dr. Necati Engec.  This matter is before

the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and

Recommendation on the University's motion for summary judgment (ECF No. 29) and the

individual defendants' motion for summary judgment (ECF No. 34).  The plaintiff filed responses

in opposition to the defendants' motions (ECF Nos. 43 & 44), and the University filed a reply (ECF

No. 46).  Having reviewed the parties' submissions and the applicable law, the court finds that the

defendants' motions should be granted.

**BACKGROUND**

The following facts are either undisputed or are viewed in the light most favorable to Adams-

Heggins, to the extent they find support in the record.  Adams-Heggins began service at the

University in 1975 as an assistant professor.  She was promoted through the faculty ranks over her career, was granted tenure, and retired in 2007.  Though retired, she immediately returned to service at the University through the State of South Carolina's Teacher and Employee Retention Incentive (TERI) program for state retirees based on a series of temporary employment contracts through June 30, 2010.

At the time of her retirement in 2007, Adams-Heggins was the principal investigator ("PI") for a study she had developed regarding healthy eating that was funded through the United States Department of Agriculture.  This study was administered by the University's 1890 Research and Extension, an outreach program of the University.

At some point following Adams-Heggins's retirement she was, unbeknownst to her, relegated to the position of *co*-PI and Defendant Engec, who had previously been an evaluator to collect and analyze data in connection with Adams-Heggins's project, was designated the PI of the healthy eating study.  This was apparently due to a University policy that required PIs to be full-time faculty members.  Defendant Whitesides became the Administrator of the 1890 Research and Extension in January 2010.  At that time, 1890 was conducting approximately twenty-two projects, each headed by one PI.  Whitesides met several times with Adams-Heggins regarding the healthy eating study.  In June of 2010, following a meeting with Adams-Heggins, Whitesides contacted Engec to schedule a meeting with him, which took place on June 10.  Engec claimed that Adams-Heggins had asked him to serve as PI; Adams-Heggins denies this.  Whitesides then met with both Adams-Heggins and Engec on June 14, during which Adams-Heggins expressed surprise at being co-PI.  Also at that meeting, Engec indicated that he no longer wished to be PI on the healthy eating study.  After

PJG

Adams-Heggins had left the meeting, the decision was made to terminate the project.  The study was terminated effective June 30, 2010, and Adams-Heggins's employment was not renewed.

## DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis in original) (internal quotation marks & citation omitted).  A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor.  Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002).  The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  The court must determine



whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms.  See id. at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

**B.**    **Burden Shifting Framework in Employment Cases**

A plaintiff may demonstrate discrimination through direct or circumstantial evidence.  When direct evidence is lacking, a plaintiff may produce circumstantial evidence and proceed under the McDonnell Douglas burden shifting framework.  Warch v. Ohio Casualty Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Pursuant to this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action.  Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010).   The defendant's burden "is a burden of production, not persuasion."  Reeves, 530 U.S. at 142.  Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason, "the McDonnell Douglas frame work—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*."  Id. (internal quotation marks & citations omitted).

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was " 'not its true reason[], but [was] a pretext for discrimination.' "  Merritt, 601 F.3d at 294 (quoting Texas Dep't of




 Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)).  Accordingly, the plaintiff's burden of

demonstrating pretext " 'merges with the ultimate burden of persuading the court that [the plaintiff]

has been the victim of intentional discrimination.' " Merritt, 601 F.3d at 294 (quoting Burdine, 450

U.S. at 256) (alterations in original); see also Diamond v. Colonial Life & Accident Ins. Co., 416

F.3d 310, 319 (4th Cir. 2005).  To meet this "merged" burden, the employee may prove by a

preponderance of the evidence that the decision maker's affidavit is untrue or that the employer's

proffered explanation is unworthy of credence.  Burdine, 450 U.S. at 256.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the

employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer

unlawfully discriminated." Reeves, 530 U.S. at 148.  However, "if the record conclusively reveal[s]

some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only

a weak issue of fact as to whether the employer's reason was untrue and there was abundant and

uncontroverted independent evidence that no discrimination had occurred," summary judgment is

appropriate.  Id.  Accordingly, the court must evaluate "the strength of the plaintiff's prima facie

case, the probative value of the proof that the employer's explanation is false, and any other evidence

that supports the employer's case and that properly may be considered on a motion for judgment as

a matter of law." Id. at 148-49.  "Notwithstanding the intricacies of proof schemes, the core of every

Title VII case remains the same, necessitating resolution of the ultimate question of . . . whether the

plaintiff was the victim of intentional discrimination." Merritt, 601 F.3d at 294-95.

**C.    Title VII Claim Against the University**

Title VII prohibits an employer from "discharg[ing] any individual, or otherwise

. . . discriminat[ing] against any individual with respect to [her] compensation, terms, conditions,

PJG

or privileges of employment, because of such individual's race, color, religion, sex, or national

origin." 42 U.S.C. § 2000e-2(a)(1). To establish a *prima facie* case of gender discrimination, a

plaintiff must show: '(1) membership in a protected class; (2) satisfactory job performance; (3)

adverse employment action . . . ; and (4) that similarly-situated employees outside the protected class

received more favorable treatment.' " Gerner v. Cnty. of Chesterfield, Va., 674 F.3d 264, 266 (4th

Cir. 2012) (quoting White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004)). Similarly,

in a discriminatory discharge case, courts have used a test requiring a plaintiff to show as the fourth

element that the position remained open or was filled by similarly qualified applicants outside the

protected class. See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir.

2004) (*en banc*).

Here, Adams-Heggins cannot establish a *prima facie* case of gender discrimination, as she

has presented no evidence supporting the fourth element. She argues in her memorandum in support

of her theory that her program was terminated due to her gender that she was the only female PI of

an 1890 program to be terminated (for reasons other than misconduct) prior to its completion after

Whitesides became the Director. However, she provides no support for this statement from the

record, and none is apparent.[1] Accordingly, the court agrees with the University that Adams-Heggins

has failed to forecast evidence that would permit a reasonable inference of discrimination *based on

gender*. See Merritt, 601 F.3d at 294-95 ("Notwithstanding the intricacies of proof schemes, the core

---

[1] Rule 56(c)(1) of the Federal Rules of Civil Procedure provides that " [a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Further, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).



of every Title VII case remains the same, necessitating resolution of the ultimate question of

. . . whether the plaintiff was the victim of intentional discrimination.") (internal quotation marks and

citations ommited).  The University is therefore entitled to summary judgment on this claim.

**D.     Civil Conspiracy Claim Against Defendants Whitesides and Engec**

Defendants Whitesides and Engec are also entitled to summary judgment on Adams-

Heggins's civil conspiracy claim against them.  Under South Carolina law, a "civil conspiracy is a

combination of two or more parties joined for the purpose of injuring the plaintiff and thereby

causing special damage."  People's Fed. Savings & Loan Ass'n v. Resources Planning Corp., 596

S.E.2d 51, 56-57 (S.C. 2004).  To establish this claim, a plaintiff must produce evidence from which

"a party may reasonably infer the joint assent of the minds of two or more parties to the prosecution

of the unlawful enterprise."  Island Car Wash, Inc. v. Norris, 358 S.E.2d 150, 153 (S.C. Ct. App.

1987).  In considering such a claim, the question is "not whether lawful or unlawful acts or means

are employed to further the conspiracy, but whether the primary purpose or object of the combination

is to injure the plaintiff."  Lee v. Chesterfield Gen. Hosp., Inc., 344 S.E.2d 379, 383 (S.C. Ct. App.

1986). "A combination of two or more persons wilfully to injure a man in his trade is unlawful . . . ."

Id.

On the record before the court, no reasonable jury could find the requisite combination or

joint assent.  As the plaintiff herself points out, the defendants' testimony on this key issue is widely

divergent, each attributing the responsibility for the termination of Adams-Heggins's program to the

other.  In fact, the testimony of each tends to show that the program would have continued but for

the action of the other.  (Whitesides Dep. 34:7-10, 52:14-53:24; ECF No. 442 at 12, 19-20) (stating

that Engec refused to oversee the study any longer), (Engec Dep. 33:3-34:15, ECF No. 44-4 at 14-15)



(contradicting Whitesides and averring that his opinion was never sought about whether the study should continue). No evidence remotely suggests, however, that Whitesides and Engec *acted together* to cause any harm to Adams-Heggins, either by terminating her program or by ending her employment with the University. Although direct evidence of a civil conspiracy is not required, no jury could reasonably infer a combination or joint assent between Whitesides and Engec in the face of this record. See People's Fed. Savings & Loan Ass'n , 596 S.E.2d at 57; Island Car Wash, Inc., 358 S.E.2d at 153. Accordingly, the individual defendants are entitled to summary judgment on this claim.

## RECOMMENDATION

No reasonable jury could find for Adams-Heggins on her claims; the court therefore recommends that the defendants' motions for summary judgment (ECF Nos. 29 & 34) be granted.

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

July 16, 2013
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).