IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | | |
|---|---|---|
| Martha Jean Adams-Heggins, | ) | C/A No. 5:11-2345-TLW-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **SUPPLEMENTAL** |
| | ) | **REPORT AND RECOMMENDATION** |
| South Carolina State University; Dr. Louis Whitesides; and Necati Engec, *in their individual capacities*, | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

As stated in the Report and Recommendation issued July 16, 2013, the plaintiff, Martha Jean Adams-Heggins ("Adams-Heggins"), filed this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq. against her former employer, South Carolina State University, as well as a state law claim of civil conspiracy against the individual defendants, Dr. Louis Whitesides and Dr. Necati Engec. The defendants' motions for summary judgment are back before the court pursuant to an Order dated September 6, 2013 by the Honorable Terry L. Wooten, Chief United States District Judge. (ECF No. 66.) On July 16, 2013, the assigned magistrate judge recommended that the defendants' motions for summary judgment be granted because Adams-Heggins cannot establish a *prima facie* case of gender discrimination as she has presented no evidence supporting the fourth element, and because she failed to forecast evidence that would permit a reasonable inference of discrimination based on gender. (ECF No. 54.) Thereafter, Adams-Heggins retained new counsel who filed objections to the Report and Recommendation. (ECF No. 61.) Chief Judge Wooten recommitted this matter to the assigned "Magistrate Judge to determine

*PJG*

if the objections change the analysis or conclusion reached by the Magistrate Judge." (Order, ECF No. 66 at 2.) Pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC, the court issues this Supplemental Report and Recommendation on the University's motion for summary judgment (ECF No. 29) and the individual defendants' motion for summary judgment (ECF No. 34). Having reviewed the parties' submissions, objections, and the applicable law, the court reaffirms that the defendants' motions should be granted.

## DISCUSSION[1]

### A.     Title VII Claim Against the University

As the court previously stated, Title VII prohibits an employer from "discharg[ing] any individual, or otherwise . . . discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Generally, to establish a *prima facie* case of gender discrimination, a plaintiff must show: '(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action . . . ; and (4) that similarly-situated employees outside the protected class received more favorable treatment.' " Gerner v. Cnty. of Chesterfield, Va., 674 F.3d 264, 266 (4th Cir. 2012) (quoting White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004)). Similarly, in a discriminatory discharge case, courts have used a test requiring a plaintiff to show as the fourth element that the position remained open or was filled by similarly qualified applicants outside the protected class. See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004) (*en banc*).

---

[1] The court included a recitation of the facts viewed in the light most favorable to Adams-Heggins in its Report and Recommendation issued July 16, 2013 (ECF No. 54) and for brevity's sake incorporates it herein.



In her objections, Adam-Heggins appears to challenge the court's application of the *prima facie* test to the facts of this case and purports to satisfy the McDonnell Douglas[2] framework with additional evidence and a new theory of her case. Adams-Heggins first appears to argue that the assigned magistrate judge found that Adams-Heggins failed to satisfy the fourth prong of the *prima facie* test because she "failed to create a dispute of fact as to whether similarly situated employees were treated more favorably." (Objections, ECF No. 61 at 10.) Adams-Heggins, relying on Abdu-Brisson v. Delta Airlines, 239 F.3d 456 (2d Cir. 2001), argues that the court failed to address situations where no similarly situated employees exist.

Contrary to this argument, the court specifically discussed that courts have used alternative elements for the fourth prong, *i.e.,* "that similarly-situated employees outside the protected class received more favorable treatment;" *or* that the position remained open or was filled by similarly qualified applicants outside the protected class. (ECF No. 54.) The precise requirements to establish the fourth prong depend on the circumstances of the particular case. The United States Supreme Court has stated that "[t]he burden of establishing a prima facie case of disparate treatment is not onerous." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). The Court also noted that the "standard is not inflexible as '[t]he facts necessarily will vary in Title VII cases, and the specification [in McDonnell Douglas] of the prima facie proof required from respondent is not necessarily applicable in every respect in differing factual situations.' " Burdine, 450 U.S. at 254 n.6 (1981) (quoting McDonnell Douglas, 411 U.S. at 802 n.13); see also Miles v. Dell, Inc., 429 F.3d 480, 486 (4th Cir. 2005) ("It is thus clear that the law in this circuit is that, as a general rule, Title VII plaintiffs must show that they were replaced by someone outside their protected class in order

---

[2] McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).



to make out a prima facie case. However, we have recognized that 'there may be exceptions to this rule in limited situations.' ") (quoting Brown v. McLean, 159 F.3d 898, 905 (4th Cir. 1998)). The United States Court of Appeals for the Fourth Circuit has observed, however, that the fourth prong, while fluid, is not so limitless as to render it superfluous. See Miles, 429 F.3d at 486-87. It thus expressly rejected the test Adams-Heggins essentially seeks for this court to apply—"that a plaintiff may bypass prong four whenever the totality of her evidence gives rise to an inference of discrimination"—because it would "read prong four out of the prima facie case." Id. at 487.

As the Supreme Court has observed, "[t]he prima facie case serves an important function in the litigation: it eliminates the most common nondiscriminatory reasons for the plaintiff's rejection." Burdine, 450 U.S. at 253-54. Although her new theory of the case is somewhat unclear,[3] Adams-Heggins appears to attempt to accomplish this by arguing that Engec, a male, remained in the PI position vacated by Adams-Heggins. Thus, she invites a comparison of Engec to Adams-Heggins.

In support of her position, Adams-Heggins argues that she has additional evidence which was not previously submitted to the court. However, the additional evidence upon which she relies is not probative of the fact she seeks to establish. Specifically, Adams-Heggins argues that she has presented evidence that demonstrates that Engec continued to be compensated and remained on the payroll in July 2010 for the project that was purportedly terminated in June 2010 which resulted in the end of Adams-Heggins's employment. Adams-Heggins grossly overstates what this evidence reveals. Adams-Heggins relies on a Temporary Employment Data Request Form for Engec reflecting an employment date beginning July 1, 2010 and ending July 31, 2010 for 1890 Research. However,

---

[3] Adams-Heggins argues on the one hand that there are no similarly situated employees, but also asserts that Engec is the person most similarly situated to Adams-Heggins.



this form is not signed and nothing indicates that it was ever approved. (Compare Temporary Employment Data Request Form for Engec, ECF No. 61-5 with Temporary Employment Data Request Forms for Adams-Heggins, ECF No. 29-4.) Further, Engec's own testimony belies Adam-Heggins's assertion that "it is clear, and undisputed, and admitted by Engec himself, that Engec entered into a new contract and received compensation for [the project], after the program was allegedly terminated in June 2010." (Objections, ECF No. 61 at 11.) Rather, regarding the document at issue, Engec testified in his deposition that he performed no work on the project that summer and that he did not know whether he received the compensation listed on the form, and suggested that because the program had been terminated "maybe they cut it." (Engec Dep. 43:3-44:20, ECF No. 61-9 at 9-10.) Accordingly, upon consideration of Adams-Heggins's additional arguments presented in her objections, the court concludes that even under the broadest standard permitted to be applied in this circuit, she still has not established a *prima facie* case of gender discrimination. See Burdine, 450 U.S. at 253, 254 n.6; Miles, 429 F.3d at 486.

Adams-Heggins also argues that the McDonnell Douglas test should not be rigidly applied. As the court previously noted, the Fourth Circuit has stated that "[n]otwithstanding the intricacies of proof schemes, the core of every Title VII case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." Merritt, 601 F.3d at 294-95 (internal quotation marks and citations omitted). In this case, no reasonable jury could find from Engec's testimony, Engec's unexecuted Temporary Employment Data Request Form, or any of the other evidence relied on by Adams-Heggins that the University's decision to end Adams-Heggins's employment was motivated by gender. The University is therefore entitled to summary judgment on this claim.

**B.    Civil Conspiracy Claim Against Defendants Whitesides and Engec**

Similarly, none of the new evidence or argument presented by Adams-Heggins changes the court's analysis and conclusion on her civil conspiracy claim against Defendants Whitesides and Engec. Accordingly, the individual defendants are entitled to summary judgment on this claim.

## RECOMMENDATION

Although Adams-Heggins purports to present additional evidence supporting a new theory of her case, the materials upon which she relies are not probative of the facts she seeks to establish. Accordingly, they do not change the court's analysis and conclusion; the defendants' motions for summary judgment (ECF Nos. 29 & 34) should be granted.[4]

*Paige J. Gossett*
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

September 12, 2013
Columbia, South Carolina

---

[4] Because the parties have already had ample time to present objections to the court's recommendation, any further objections must be filed by September 19, 2013.